Williamsport Hospital v. Secretary United States Department of Health and Human Services Mr. Myers and Ms. Green. Take your time setting up. Whenever you're ready. Good morning, Your Honors. My name is Tim Myers. I am here today with Tom Helbig with the Elliot Greenlee firm and we represent Williamsport Hospital. I've reserved two minutes for rebuttal. That's fine. Can I just ask, just a question that jumps out at you at the outset. You asked or said it was error to review these claims under 705-1 rather than 705-2, but how does that help you? We can't compel agency action under 706-2, can we? And you're asking us in effect to compel agency action. No, Your Honor. It's under 706-2 and it's 706-2 is compelling an agency to comply with not to violate the law. And there's A and then there's B, which is arbitrary and capricious and goes to our equal protection claims and our constitutional claims. But yeah, we do believe that this court has standing. No, but are you asking, can we compel agency action under 706-2? What we're seeking, Your Honor, is we're seeking to, Williamsport Hospital, the only acute care hospital in Lycoming County, fell into a black hole created in part by this court in Geisinger. And what the agency did is the agency refused to comply with this court's pronouncement in Geisinger and the Second Circuit's pronouncement in Lawrence. Well, that's not entirely accurate. You could have gone in and asked for your cancellation to be undone or brought an injunction or something as compared to just filing under the current rules whereby, you know, you didn't qualify. And the hospital did that, Your Honor. One of the problems here is that, and I'm going to have a problem answering some of your questions perhaps because there's no factual record. What happened here was the district court issued an order requiring supplemental briefing and treated the defendant's motion for judgment on the pleading as if it were a motion for summary judgment when there was no record. And in fact, that's exactly what happened. The hospital did apply to the agency and did seek post-interim final rule application relief from the agency. The agency rejected it and said we don't have time to adjudicate your request for an appeal for lack of a better word because the agency requirements required a rule within I think it was 105 days. So what we're arguing about here today, one of the problems is there's no record. And so to answer your question, we could have filed an injunction is what you said, but we did not because the IFR, the interim final rule, was not published. Instead, the Department of Health and Human Services was taking the public position that Geisinger was wrong, that it did not have to comply with it, it was not going to comply with it, and it was not going to apply the circuit's ruling in Geisinger. And as a result... What did they say that they weren't going to apply the circuit's rule in Geisinger? Well, Your Honor, and again, this is one of the issues with what the procedural prosecutor of the case was. When the defendants, when the department filed a motion for judgment on the pleading, we were involved in a discovery dispute in front of the district court. We were seeking... We had a difference of opinion about what the administrative record consisted of. We were seeking documents consisting of some of the Geisinger documents. And I'll give you a few examples of documents that we did not have at the time. And in our appendix, at appendix number 434 and 435, and this is an example of a document that was not produced to us in the underlying case, but was attached to the Department of Health and Human Services supplemental brief in response to the district court's request for supplemental order. And it is a March 31st, 2016 letter from the Center for Medicare, CMS, to the lawyers in the Geisinger case, in which it said, and this is before the promulgation of the interim final rule, and Your Honor, to get back to Judge Ambrose, your first question about why, you know, we have standing here, is we were seeking the... We're seeking our claims because the defendants did not promulgate the interim final rule in accordance with the Geisinger case. So in this letter, March 31st, 2016... They did eventually, did they not? They did. And in the letter to the Geisinger lawyers, again, this was not made available publicly to us, but it was part of the... It was a docketed letter that we relied on. It said, in reviewing any reclassification applications by Geisinger, HHS will adhere to the law as announced in the Third Circuit. CMS has advised the MGCRB... That's the review board, okay. ...of the Third Circuit's decision, and advised the board that it must render future determinations consistent with that decision. This is March 31st, 2016, which is six months after the application was due by Williamsport, under the old rule, which should have been... Which Williamsport believed was no longer in effect. Two weeks after this, they promulgated the interim final rule. Why is... Why are you not barred from bringing suit? Your position is that had you appealed to the secretary, the secretary's ruling would have been final and you would have been precluded from relief. But because you didn't appeal, then the ruling isn't the ruling of the secretary and you have the right to file suit. Is that correct? Yes. That is one of three reasons we put forth in our supplemental letter or supplemental brief to the court about why this court has jurisdiction. That's one reason. You're saying that that's the case. How do you get around our Robert Wood Johnson case from 2002, which says neither the district court nor this court has jurisdiction over the final decision of the review board or the administrator denying the hospital's application for reclassification. So it's not just the secretary in terms of the way our court has reviewed it. It's also whether it be the board or the administrator. I don't know how to get around Johnson. Well, Your Honor, we get around it by citing the mock mining, which is the plain language of the statute. The plain language of the statute provides... But you're asking us to go and bank to do that, right? No. No. I think you're... What plain language of the statute? The plain language of the statute says that the decision of the secretary is final and appealable. And we believe that it provides an alternative way of relief when instead of going right to the secretary, and by the way, Your Honor, we try. And again, that's not in the record. How about the decision of the MGCRB is final and binding upon the parties unless it is foreclose you? No, Your Honor. We believe that the plain language and the court's ruling in mock mining suggests that we can appeal directly to this court because the factors in the underlying statute are the same. We did not apply to the secretary. We did not appeal to the secretary, although we tried. And again, Your Honor, as I said earlier, one of the tough issues, is because the district court treated this ruling as if it was summary judgment instead of a motion for judgment on the pleadings. And that is not in the record, the fact that we did seek secretary approval. And if the secretary had agreed to accept that, then we'd be here today. But you still need to tell me how I get around the Johnson case from 2002. Because, Your Honor, we cite the mock mining case from 2015. And we believe that the mock mining cases and the other cases in our supplemental briefing do provide jurisdiction to the court. And the 2015 case is from where? Third Circuit, Your Honor. How can the Third Circuit overrule the Third Circuit? I'm sorry. Mock mining is the United States Supreme Court case. Okay. Well, that's different. And what does the 2015 case say specifically? It is, it's that the, it's the Supreme Court articulating that there's a strong presumption that a federal court has jurisdiction over claims. And to get back to Judge Riddell's. That's an EEOC case. It is an EEOC case. But the application is the same, Your Honor. And another reason we have jurisdiction, of course, is because we assert a claim. You get a right to sue letter in the EEOC. There's no such thing here. Correct? That's correct, Your Honor. But the administrative record, we did not exhaust our administrative record by going to the secretary here. Well, but that can't be that by not filing an appeal, you then can go into district court. Especially, I just cited you the language that says, the board's ruling is final. And, Your Honor, the other, we have a claim for equal protection here, which is an Article 3 claim that can only be decided by an Article 3 judge. The claim, that claim was dismissed by the district court. And that was not subject to review in the administrative record below. Could you explain your equal protection claim for us? Yes, Your Honor. Our equal protection claim is essentially that, as I said earlier, Williamsport kind of fell into a dark hole between the court's ruling in Geisinger and the defendant's promulgation of the interim final rule in April. So the ruling in Geisinger was September, and the promulgation of the rule was in April. During that time period, the defendants were not allowing for a simultaneous application of rural and urban, which the interim final rule allowed in April. When that rule was ultimately published, and it had not been published earlier, so the Williamsport had no idea how to appeal, what to do, but the interim final rule said that it will apply that rule so that you could have simultaneous rural and urban classification in order to go forward, but it would only allow that for existing appeals. So the interim final rule said for 2018 fiscal year applications that the new rule would apply. But it would not apply for 2017 fiscal applications unless there was an appeal pending. And that's a valid equal protection claim because an appeal is pending in one instance and not in another instance? That is the primary basis for our equal protection claim. And then you're not similarly situated to anyone who's being treated differently. These are applications to different sets of facts, isn't that correct? I mean, they have to establish some parameters under which they're going to make this apply to X or Y. Any time they do that and someone is not Y but is X, that's an equal protection challenge? Well, the similarly situated, Your Honor, is the underlying plaintiff or hospital itself. Which not the procedural posture of the claim, but the actual hospital itself is similarly situated in that it was one of the hospitals within the urban and rural kind of gray area that was applying for reimbursement. And that is the similarly situated. And to arbitrarily and secretly, Your Honor, secretly say that we're going to appeal to people who had filed an appeal or had a live appeal pending. And again, I'm going back to the fact that there's no factual record here to argue where the appeal should have been pending. Williamsport tried to participate in that appeal. And it filed it kindly. But it was rejected by, I'm sorry, Your Honor, but it was rejected because it was filed a day before the appeal period was run. And the defendant said, well, now we don't have time to adjudicate it. You're saying that the IFR discriminated against you, right? That's your equal protection argument? No. No. And that's where another error that the district court made. We're not saying the IFR discriminated against Williamsport. We're saying that the defendants discriminated against Williamsport by not applying the IFR to Williamsport, by not promulgating the IFR in a timely fashion when it should. So wouldn't your application have been denied whether it be the IFR or the reclassification rule that was overturned in Geisinger or the final rule? It would. If the IFR had been applied, Williamsport would have received the funding and would have received $5 million for reimbursement for its patient care. And that is a fundamental error that the district court made. That it seemed to think that we were arguing that the IFR itself was applied improperly. In fact, it was never applied. Final question. Why didn't the hospital seek 401 status and then apply and file for an injunction ordering the board not to apply the reapplication rule? And that was the black hole that it fell into in between because if it had done that, it would have been penalized. Essentially the same penalty that resulted in this case. In order to, at the time, because the IFR was not applied to Williamsport, it had to redesignate it itself as a rural hospital, in which case it would have lost the funding for a year because there's a lag time of a year between the application and the actual receipt of the funding. So it would have been reimbursed at a rural rate instead of the urban rate and it would have lost that money. And that is what the IFR fixed so that an applicant could apply simultaneously as an urban and as a rural designee. And it was forced to, and this is another fact that the district court did not recognize, the application form that the defendants required Williamsport to utilize had the old rule, the reclassification rule, which is what was applied, not the IFR, the reclassification rule. The reclassification rule was embedded into the application that Williamsport was required to submit to the defendants for consideration. And as a result of that, they had the reclassification rule applied to their application instead of the IFR. And they were in a, they were between a rock and a hard place. You lose one way, you lose the other way. Are we only talking about fiscal year 2017 right now? Is that right? Yes. Have things been straightened out for fiscal year 2018? Yes, Your Honor. Okay. Thank you. Thank you. May it please the Court, I'm Anna Green for the Secretary of Health and Human Services. It is our position that the district court properly determine that Williamsport does not have standing and has not stated a claim underneath the APA. However, this court's, the district court's decision may also be affirmed on the basis of subject matter jurisdiction. You say they don't have standing. I mean, they were harmed. So don't they have standing? I mean, it may be that you don't think they have a claim, they haven't stated a prior claim, but really that they have no standing? Williamsport alleges that it was prevented from seeking reclassification to Bloomsburg-Bearwick for fiscal year 2017 on the basis of the reclassification rule and the policy announced in the interim final rule and final rule withdrawing the reclassification rule. The reclassification rule states that, stated at the time that a hospital that had an existing 401 status, if they sought to use that status to seek an additional reclassification to the board, they could not do so. The fundamental problem with Williamsport's claim is that it did not have a 401 status. It voluntarily canceled a status in 2012. So when it applied for geographic reclassification for fiscal year 2017, it was an urban hospital, classified as urban, seeking to be classified to a different urban area. Pursuant to our regulations, a hospital has to be no more than 15 miles from that urban area. But what you're saying is they really don't, they can't state a claim, but they do have standing to come in. But their injury is not traceable to any conduct by the secretary. The secretary properly applied its regulations. But that's the issue, isn't it? And so, similarly, they were not harmed by the interim final rule or the final rule withdrawing the reclassification rule. That rule provided relief to hospitals that had been prevented from reclassifying because of the reclassification rule, because of an existing 401 status, and then had appealed that determination to the administrator. Again, Williamsport did not have 401 status. So the reclassification rules never applied to its application. How do you view the Williamsport's characterization of harm that was caused by the government in this case? I'm trying to figure that out. So to me, they're asking this court to intervene to correct errors that Williamsport made. As soon as Geisinger was decided, it could have applied for 401 status at that time, because Geisinger was operative in the Third Circuit. So that's the way you think out of the black hole that it's referred to in the opening? Yes, and hospitals must make determinations to choose a path. They could have done what Geisinger did and challenged their classification rule as well if they had seen a problem with that. So if they sought 401 rural status and that application had been denied, would judicial review of the rejection also be barred? If they had sought 401, they actually had gone ahead and sought 401 rural status, but it was denied. Would judicial review of that rejection be barred? I should clarify that 401 determinations are made by the CMS regional office, whereas requests for geographic reclassification are made by the board. They're two separate application processes. And so I understand your question to be referring to the board denying the request for reclassification based on the 401 status, not the regional office. Who rules on the 401 application? That is done by the CMS regional office. Okay. And if that was denied, then what's the next step that they would take then? That, I think, is a separate process. I would have to double check that as well. Okay. But the board's determination would not be subject to judicial review. That is clear by both statute and regulations. And no reconsideration, or that's only with the secretary? If a provider does not like the board's determination, it has 15 days to seek appeal to the administrator. Williamsport did not do that here. They stated that they tried, but they wrote a letter to the administrator asking her to exercise her discretionary review. That was well past the 15 days in which they had time to appeal that determination, and they did not. The idea of whether judicial review is barred, that is, whether we have jurisdiction in effect to look at this, it gets very complicated, it seems. Let's assume that their particular application runs into a problem, it's denied, then we may not have jurisdiction under 1395. But what if they were challenging the rule itself, similar to what was done in the D.C. Circuit in Parkview and in Sullivan? And would we then have jurisdiction to look at the rule? Or do we look at it like that's just trying to get through the back door, what they couldn't get through the front door? I would say that is a little bit like trying to get through the back door when they couldn't get the front door. And I think that is particularly clear here. In those cases, it was very clear that the provider was not actually challenging the underlying board's determination. Here it is very clear that Williamsport is challenging the board's determination in their request for relief in the complaint. They specifically ask the court to reclassify them to Williamsport Barrick and ask them to be reimbursed on the basis of the wage index of Williamsport Barrick. Those things cannot happen without reversing the board's determination. Well, this situation is distinct from Geisinger, where there they decided an application wouldn't be decided, and it was clearly based upon the rule of the regulation. Exactly. There's no board decision even at that point. And here, in their submission, they say they're not seeking reclassification, but they're seeking the difference between the amount they were paid and the amount to which it was statutorily entitled. So they really are seeking relief from the actual classification decision. Exactly. And so, therefore, our position is that the holdings in Skagit and Du Bois, which was affirmed by this court, are more persuasive here. And in those circumstances, the courts held where the ultimate goal is reversal of the board's determination, those claims are precluded from judicial review. And so that is what those are decisions that this court should look at. So are you saying we should decide this case based upon lack of jurisdiction? That is the most straightforward way. And why did the district court not go that route? Because it was argued, correct? It was argued that we filed our motion for judgment on the pleadings on that basis. And the district court requested supplemental briefing on several additional questions and then raised the questions of standing and the failure to state a claim under APU. And if it's a challenge to the reclassification rule, now there's a new rule, so the matter would be moved. Exactly. And in fact, Williamsport has, by reason of the interim final rule, withdrawing their classification rule, they received the relief they requested for fiscal year 18. They reapplied for 401 status and got the relief they requested for fiscal year 2018. This is exactly what Geisinger had to do as well. What about their equal protection claim? Again, the case law is clear that when constitutional claims are completely intertwined with the statutory claims, which here is the request for additional medicare reimbursement through the geographic reclassification process, that those claims are also barred. And so the same applies here. Williamsport's claims are completely go to the merits of their reclassification determination. And even if this court were to reach the equal protection issue, those are only subject to a rational basis review. And clearly, the secretary's actions meet that deferential standards. Government determinations conferring monetary benefits are entitled to resumption of constitutionality. Earlier when you said they could have sought 401 status and Judge Ambrose asking what if they're denied, what would have been their clear path to resolve this? Or get it resolved. Or get it resolved from the get-go and avoid the black hole. What would have been their clear path? As soon as Geisinger was decided, they could have applied for 401 status. Okay. And what would have happened to that application? The regional office must make a determination within 60 days of the application of 401 status. And that status becomes effective of the date of the application. And would that have harmed them in any way? They said they still would have suffered the damages. No, because the reclassification rule had no ongoing effect in the Third Circuit at that time. And so even if they were for some reason denied by the board on the basis of having the 401 status, they could have appealed that to the administrator. And then the interim final rule and final rule would have corrected any such denial. And the timing would have allowed that? Yes. The board's decision was not – the board did not reach its decision until February of 2016. A hospital only must have the 401 status by the time the board makes a determination. And so they had several months in which they could have. Are there any fact issues that require a remand in this regard? No. In fact, there is a lengthy administrative record. Agency action claims are based on the administrative record. There is over 600 pages that has been provided, including all of the board's determinations on request for reclassification. Thank you very much. Mr. Myers? Can I ask you about the – you made – on the jurisdictional point, you argued that you are seeking review only of the agency rule. Is that correct? Your Honor, I think that my answer to your question is – relates to the argument by Ms. Green. We could not have – we were in a black hole, as I said earlier, and we could not do anything about that. I'm just trying – what's the jurisdictional hook here? Sullivan, Your Honor, held that you have jurisdiction. But how do I get around – we have a case when Judge Smith was on the district court, our chief judge, a case called Dubois Regional Medical Center v. Shalala in 1996. And basically what he was saying there, where the agency rule was ostensibly dealt with or argued to give jurisdiction, he essentially said you can't get through the back door, which you can get through the front door. And that was affirmed by our court. So while Parkview and Sullivan in the D.C. Circuit may go another way by saying that if the agency rule is really collateral to the attempt that you have for your individual case, we have enough of a jurisdictional hook. But I don't know how to get around Dubois. Because, Your Honor, the rule was struck down by Geisinger and relying on Sullivan and Parkview. And the defendants secretly continued to apply it. And there are facts that are at issue here. Contrary to what Ms. Green said, there is no way that Williamsport could have rectified that situation. It either had to – because the defendants were applying the reclassification rule even though Geisinger said it was unlawful. They were continuing to apply it. And they would have had to have redesignated themselves as a rural and reapplied instead of urban. They were in the State College Index. And they would have had to reclassify as rural instead of simultaneously proceeding, which is what the new rule said they could do. Did you want the district court to say that what they did was wrong and their policy and regulation was wrong? Or did you want the difference between the amount you were paid and the amount to which you believe you are statutorily entitled? I have to say yes, Your Honor. Yes. But – but – Because that's what you said in your submission. But – That you are seeking the difference between. Why is that not a – But Geisinger already ruled. Geisinger already ruled that the – that – It had already been found that it was wrong. So you clearly were asking for the determination to be undone and to get your money. No. Right? What we're seeking is a determination that the continued application of the reclassification rule after it was determined to be unlawful was improper. And its continuing application was unlawful. Okay. It was unlawful. And if the court had said that, that's fine. But what you really wanted was your money. Isn't that right? Well, I think that's true for Geisinger, too. I think that's true for everybody. No, Geisinger, they agreed there would be no action on the application. It was not – that wasn't before the court. Geisinger did not seek reclassification. What we are seeking is to be treated like we should have been treated after the Geisinger court ruled we should be treated so that our application could be simultaneously considered to be rural and urban. A result of that would be a monetary configuration. That's true. But we're really seeking – the relief that we're seeking is that the rule be applied like it should have been applied. And, Your Honor – Aren't monetary decisions – I mean, isn't the whole concept of budget neutrality that is the basis for the barring of appeals? Isn't that – doesn't that revolve around the money determination? Well, Your Honor, budget neutrality from the Scalela case – or the Skagit case, I'm sorry. You know, it's frustrating for us to argue budget neutrality because one of the things here – I think it's a red herring. I think that – and I understand that it's really important to the federal government for budget neutrality, but we're talking about one hospital that fell into a black hole in Williamsport, Pennsylvania. There's no real budget neutrality here. To the extent there was any budget neutrality, it was already decided in Geisinger. But how do you respond to the point that we've made, and I think your opposing counsel made pretty clearly, that the way out for you in this, quote, black hole, close quote, was to seek a – in effect, a reclassification, right? And, Your Honor, there is a simple answer to that. I would like to refer the court, the panel, to specific instances in the record, and again, the record that was not developed. But we could not – Williamsport could not do that because the new rule said they could apply simultaneously as urban and rural. What Ms. Green suggested was that Williamsport should have reclassified as rural and then applied. But that's not what Geisinger said. That's not what the interim final rule says. The interim final rule says that you could apply simultaneously as urban and rural. The net result of that would have been as bad or worse than what we're standing here today talking about. If you had applied for rural and they had to act within 60 days, would that not have covered you for fiscal year 2017? No, Your Honor. At the time, and the timing, the dates are critical here. Our application was due August 31st – Geisinger ruled, I think, July 23rd, 2015. The Williamsport Hospital application was due August 31st, 2015. And it was not adjudicated until February, I want to say, 16, 2016, but sometime in February 2016. On March 31st – and then there was a – I think it was a 105-day window to reapply to the secretary. And you applied on – you applied on what, the 104th day? Correct. Really, the decision has to be made within 105 days? And in between that window, the interim final rule was promulgated. But before the interim final rule was promulgated in April 2016, CMS sent a letter to the Geisinger lawyers saying, now we're going to start applying it. March 31st, 2016, this was – they filed a brief in the Lawrence case in the Second Circuit saying, we're not going to apply Geisinger. On August 8th, 2015, they wrote a letter to the Second Circuit saying, we're not going to apply – we're going to fight Geisinger, we're not going to apply it. These are – and then the application continued to embed the reclassification rule. And they have the right to fight Geisinger outside the Third Circuit. Yes, they do. But they were telling the Second Circuit, they're not going to apply it in the Third Circuit. And they were telling the lawyers in the Geisinger case, they're not going to apply it in the Third Circuit. And they put it in the application that they're not going to apply it in the Third Circuit. So when they say, oh, it – they could have done it, it was in the Third Circuit, it was not in the Third Circuit. But couldn't you have filed something at that point to get a declaration of exactly what you were supposed to do presented with this black hole? And, Your Honor, that – As compared to simply file something assuming that they were going to somehow deem you reclassified. That's exactly what Williamsport was trying to do. They were communicating with the Secretary. They were communicating with the MGCRB. They were communicating with the CMS. They were trying to – to try to figure out a way not to fall into this black hole. They asked. And they were rejected. And that's part of our – that's part of our relief and part of our claims. We're saying the Secretary should have exercised his or her discretion at that time to consider Williamsport's application because it fell in this black hole. And, again, Williamsport was operating in the dark. It was – not only was it a – Sometimes you just can't make these agencies behave. No. I guess if you're in a black hole, you're in the dark. Thank you, Your Honor. Thank you. Thank you to both counsel for well-presented arguments. And we'll take the matter under advisement and call our third case of this morning.